UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Health First Pharmaceutical Inc. t/a Springview Pharmacy,

Plaintiff,

v.

Optum RX,

Defendant.

Civil Action No. 2:24-cv-08041-SDW-JBC

**MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 1

A. The Pharmacy Provider Manual .......... 1

1. Termination Under the Provider Manual .......... 2

2. Pre-Arbitration Dispute Resolution Provisions .......... 3

3. Arbitration Provisions .......... 4

B. OptumRx Audits Springview .......... 5

C. OptumRx Terminates Springview for Cause .......... 7

D. Springview Files Demand for Arbitration and Brings Suit in Court .......... 7

III. ARGUMENT .......... 8

A. The AAA Should Decide the Preliminary Injunction .......... 8

1. The Federal Arbitration Act .......... 8

2. The Arbitration Clause Delegates Questions Regarding Scope and Jurisdiction to the Arbitrator .......... 10

3. Plaintiff's Injunction Claims Are Within the Scope of the Arbitration Clause .......... 11

4. There is No Reason for the Court to Retain Jurisdiction to Decide the Preliminary Injunction Motion .......... 12

B. Springview's Motion for Preliminary Injunction Fails on the Merits .......... 14

1. Preliminary Injunction Legal Standard .......... 15

2. OptumRx Can Terminate Springview Before the

Conclusion of the Merits of an Arbitration ........................ 16

3. Springview Will Not Suffer Irreparable Harm .................. 21

4. The Harm to Other Interested Parties and Public Policy Weigh Against Granting an Injunction ................... 24

IV. CONCLUSION ........................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995)....................................................................................8

*In re Arthur Treacher's Franchisee Litig.*,
689 F.2d 1137 (3d Cir. 1982) ...........................................................16, 20

*Cal. Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Estate Grp.*,
193 Cap. App. 4th 849 (2011) ...............................................................13

*Century Indem. Co. v. Certain Underwriters at Lloyd's*,
584 F.3d 513 (3d Cir. 2009) .....................................................................9

*Community Hospital Group, Inc. v. Blue Goldfaden*,
384 N.J. Super. 251 (App. Div. 2006) ....................................................23

*Community Hospital Group Inc. v. More*,
365 N.J. Super. 84 (App. Div. 2003) ......................................................23

*Doctor's Assoc., Inc. v. Casarotto*,
517 U.S. 681 (1996)....................................................................................9

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*,
847 F.2d 100 (3d Cir. 1988) ...............................................................21, 23

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019)..............................................................................9, 10

*Indocarb Corp. v. Madhavan*,
Civil Action No. 19-889, 2020 U.S. Dist. LEXIS 15805 (W.D. Pa. Jan. 29, 2020).........................................................................................10, 11

*Instant Air Freight Co. v. C. F. Air Freight, Inc.*,
882 F.2d 797 (3d Cir. 1989) .....................................................................15

*J.I. Kislak, Inc. v. Artof*,
13 N.J. Misc. 129 (N.J. Ch. Ct. 1934) ....................................................23

*Jackson v. Donovan*,
215 Cal. App. 2d 685 (1963) ....................19

*John Hancock Mut. Life Ins. Co. v. Olick*,
151 F.3d 132 (3d Cir. 1998) ....................12

*Landmark Drug Corp. d/b/a Landmark Pharmacy v. Optum Rx*
Dkt. No. SOM-C-12071-23 (N.J. Ch. Div. Somerset Cnty) ....................22

*Landmark v. OptumRx*,
No. 3:24-cv-00024-MAS-DEA, Dkt. 12, Order on Motion to Dismiss (D.N.J. Feb. 8, 2024) ....................13, 22

*Lopez v. Credit Union of N.J.*,
2024 U.S. Dist. LEXIS 79026 (D.N.J. Apr. 30, 2024) ....................16

*Med-Care Diabetic & Med. Supplies, Inc. v. Strategic Health Alliance II, Inc.*,
No. 2:14-082, 2014 U.S. Dist. LEXIS 10881 (S.D. Ohio Jan. 29, 2014) ....................22, 24

*Medcam, Inc. v. MCNC*,
414 F.3d 972 (8th Cir. 2005) ....................19

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
473 U.S. 614 (1985) ....................9

*Morton v. Beyer*,
822 F.2d 364 (3d Cir. 1987) ....................21

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ....................9

*National Risk Services, Inc. v. RK Risk Management, LLC*,
2005 WL 3058162 (N.J. Ch. Div. Nov. 10, 2005) ....................23

*Ortho Pharmaceutical Corp. v. Amgen, Inc.*,
882 F.2d 806 (3d Cir. 1989) ....................13, 14

*Park Irmat Drug Corp. v. OptumRx, Inc.*,
152 F. Supp. 3d 127 (S.D.N.Y 2016) ....................23

*Perry v. Lee*,
2020 U.S. Dist. LEXIS 107631 (D.N.J. June 19, 2020) ....................17

*Reilly v. City of Harrisburg*,
790 F. App'x 468 (3d Cir. 2019) ....................15

*Sandoz, Inc. v. United Therapeutics, Corp.*,
2020 U.S. Dist. LEXIS 27606 ....................21

*SCA Pacific Holdings Inc. v. Sutter Health*,
2022 Cal. Super. LEXIS 72237 (Nov. 9, 2022) ....................18

*Sorkin's Rx Ltd. v. Express Scripts Inc.*,
No. 4-15-CV-114-JAR, 2015 U.S. Dist. LEXIS 6002 (E.D. Mo. Jan. 20, 2015) ....................22, 24

*Thayer Plymouth Ctr., Inc. v. Chrysler Motors Corp.*,
63 Cal. Rptr. 148 (Cal. Ct. App. 1967) ....................21, 23

*Trilogy Health Care, LLC v. Medco Health Sols., Inc.*,
No. 13-550 (SRC), 2013 U.S. Dist. LEXIS 129385 (D.N.J. Sep. 10, 2013) ....................21, 23

*U.S. Foodservice, Inc. v. Raad*,
2006 WL 1029653 (N.J. Ch. Div. Apr. 12, 2006) ....................23

*Vertiv Corp. v. SVO Bldg. One, LLC*,
No. 1:18-cv-01776-RGA, 2019 U.S. Dist. LEXIS 56096 (D. Del. Apr. 2, 2019) ....................11

*Vital State Can., Ltd. v. Dreampak, LLC*,
303 F. Supp. 2d 516 (D.N.J. 2003) ....................15

*Zenith Labs., Inc. v. Abbott Labs.*,
No. 96-1661, 1997 U.S. Dist. LEXIS 23954 (D.N.J. Oct. 1, 1997) ....................16

**Statutes**

9 U.S.C. § 2 ....................8, 9

9 U.S.C. § 3 ....................10

AAA Commercial Arbitration Rules and Mediation Proc. Rule 7(a) ....................10

AAA Commercial Arbitration Rules and Mediation Proc. Rule 39 ....................11, 13, 14

N.J.S.A. 2A:23B-8(a) ....................13

## I. INTRODUCTION

Plaintiff Health First Pharmaceutical Inc. t/a Springview Pharmacy's ("Springview") Motion for Preliminary Injunction should be denied both because it should be decided by the arbitrator as specified by the indisputably binding arbitration clause, and because it relies on entirely on a twisted and illogical reading of the arbitration provision in the Provider Manual that governs the parties' relationship.

The dispute before the Court is a legal one that depends on the arbitration clause that governs the parties' relationship. The natural and correct reading of the arbitration provision is that the parties must litigate any disputes in the AAA, not in court, after the conclusion of a dispute resolution process. Neither party is prohibited from acting on an issue in dispute until the conclusion of arbitration.

It is Springview's burden to demonstrate injunctive relief is appropriate, and Springview has failed to meet that burden on all fronts. OptumRx is entitled to terminate Springview prior to arbitration. With zero likelihood of success on its only argument before the Court, Springview's Motion must be denied. If Plaintiff's Motion is not denied outright, Springview should be ordered to bring its Motion in the AAA within one week of this Court's Order.

## II. BACKGROUND

### A. The Pharmacy Provider Manual

Plaintiff Springview is a pharmacy in-network with OptumRx. Complaint

("Compl."), Dkt. 1-1 at 5, ¶ 6.[1] Springview participates in OptumRx's network through a Pharmacy Service Administrative Organization ("PSAO") called Elevate, which contracted directly with OptumRx (the "Agreement"). *Id.* Pharmacies in OptumRx's pharmacy network must abide by the Pharmacy Provider Manual (the "Provider Manual"). *Id.* at ¶ 8. The Provider Manual sets forth termination and dispute resolution requirements, which are discussed in greater detail below. The Agreement and Provider Manual are governed by California law. *See* Declaration of Tiffany Mlodzik in Support of OptumRx's Opposition to Plaintiff's Motion for Preliminary Injunction (hereinafter Mlodzik Decl."), Ex. 1 at § 11.11 ("This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of California"); Ex. 2 at 127 (stating that the arbitrators "shall not vary or ignore the terms of the Agreement . . . and shall be bound by controlling law").

**1. Termination Under the Provider Manual**

Pursuant to the 2024 Provider Manual,[2] OptumRx may "terminate or suspend the Agreement or any applicable Addendum or Amendment (in whole or in part with respect to an applicable Client, network and/or Network Pharmacy

---

[1] A full copy of the Complaint can be found at Dkt. 1-1 at 4-17.
[2] The current Provider Manual is available at https://professionals.optumrx.com/content/dam/o4-dam/resources/pdfs/guides/OptumRxPharmacyProviderManual2024-Version%203.2.pdf.

Provider location) pursuant to business needs, Client-specific network design, for, in the opinion of Administrator, actions detrimental to the provider network(s) or for cause, regardless of the network in which the Network Pharmacy Provider participates for reasons including, but not limited to:" (1) OptumRx "reasonably believes that Network Pharmacy Provider or Pharmacist is or has been engaged in fraudulent activity of federal/state law"; (2) OptumRx "determines in its sole and absolute discretion that Network Pharmacy Provider or Pharmacist has violated Administrator's policies and procedures, including without limitation those included in this PM in the provision of Covered Prescription Services;" or (3) Springview "is otherwise non-compliant with the PM." Mlodzik Decl., Ex. 2 at 124-25.

OptumRx may also "terminate or suspend Network Pharmacy Providers in accordance with state law notice requirements where applicable, from the network for reasons, which include, but are not limited to:" (1) "Breach of any of the terms set forth in the Agreement, PM, Addendum and other Administrator documents;" or (2) "Fraudulent Claim submission activity detected." *Id.* at 125-26.

**2. Pre-Arbitration Dispute Resolution Provisions**

The Provider Manual also sets forth dispute resolution procedures and requirements. First, the Provider Manual defines "Dispute" to include "any and all issues, disputes, and/or controversies between the parties, including, but not limited to all disputes relating in any way to the parties' relationship, the terms of

the Provider Network Agreement ("Agreement") and/or this PM, and the Pharmacy Provider's status in the Administrator's network." Mlodzik Decl., Ex. 2 at 126. The defined term "Dispute" excludes, however, "[a]ll disputes concerning the immediate termination or non-renewal of the Agreement or the actual or threatened disclosure of Administrator's or Client's Proprietary Information." *Id.*

Except for immediate terminations, which this case is not, the parties agreed to "engage in good faith discussions to try to resolve the Dispute." *Id.* at 127. If the parties are unable to resolve the dispute within 30 days, either party may request a meeting or telephone conference to resolve the dispute. *Id.* If the dispute is unresolved, either party may request arbitration. *Id.*

### 3. Arbitration Provisions

The Provider Manual contains a broad arbitration clause, which states that the arbitrator(s) appointed by the American Arbitration Association ("AAA"):

> shall decide any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate. For further avoidance of doubt, all Disputes—including Disputes regarding termination hereof or non-renewal hereof and actual or threatened disclosure of Administrator's Proprietary Information or Client's Proprietary Information—are subject to the arbitration process described herein.

Mlodzik Decl., Ex. 2 at 127. Additionally, the Provider Manual also states that "Notwithstanding judicial proceedings to confirm, vacate, or enforce an award, the parties acknowledge that neither will have the right to litigate a Dispute in court, and that neither will have a right to a trial by a judge or jury, and the right to

discovery is limited. **The parties each waive all such rights by agreeing that all disputes must be resolved exclusively in arbitration**." *Id.* at 128 (emphasis in original). The Provider Manual further states that the parties agree the arbitration provision is subject to the Federal Arbitration Act ("FAA") and that the arbitration "section shall survive any termination of the Agreement and the conclusion of any business dealings between the parties." *Id.* at 128-29.

**B. OptumRx Audits Springview**

OptumRx completed a desktop audit of Springview on October 12, 2023. Dkt. 1-1 at 118. As part of the audit, OptumRx reviewed each prescription for "validity, program parameter adherence, regulatory compliance as well as data entry type errors." *Id.* OptumRx also completed an invoice reconciliation for all purchase records by verifying that the pharmacy had sufficient inventory to cover all the claims Springview submitted to OptumRx. *Id.* OptumRx identified numerous issues in the audit, which it conveyed to Springview by letter dated October 12, 2023. Dkt. 1-1 at 121-39.

Springview appealed the preliminary audit findings. Dkt. 1-1 at 141-47. OptumRx reviewed Springview's appeal submission and revised some, but not all, of the preliminary findings. Dkt. 1-2 at 33-49. After OptumRx issued its final findings, Springview provided additional information. *Id.* at 51-53. OptumRx reviewed the additional information Springview provided, and while OptumRx amended some of its findings, it still found the following violations:

- 1 instance in which Pharmacy submitted claims based on prescription orders that do not contain the frequency of testing as required per CMS MLN Matters Number: SE1008.
- 3 instances of claims determined to be invalid and discrepant claims billed to OptumRx by Pharmacy were identified through direct confirmation with a practitioner who denied prescribing medications submitted by Pharmacy;
- 1 instance of a missing signature log was noted during the audit;
- 42 instances in which Pharmacy submitted claims for products purchased from a non-accredited source;
- 42 instances in which Pharmacy submitted claims for products purchased from an unlicensed wholesaler;
- 1 instance in which Pharmacy did not timely reverse a claim that was not dispensed within 14 days of claim submission;
- 2 instances of incorrect prescriber submitted; and
- 1 instance in which OptumRx received direct confirmation from a member who denied paying the copay or provided indication that the pharmacy waived or otherwise altered the copay amount transmitted by OptumRx.

*Id.* at 71-85.

**C. OptumRx Terminates Springview for Cause**

On March 20, 2024, OptumRx notified Springview that it would be terminated for cause effective July 12, 2024, due to the inventory shortages, one member denial, one prescriber denial, and purchases from a non-NABP accredited distributor identified in the audit. Dkt. 1-2 at 87-88.

Springview appealed the termination decision on March 20, 2024. An appeal hearing was held on May 8, 2024. Mlodzik Decl. ¶ 7. After the hearing, OptumRx upheld its decision to terminate Springview. Springview requested a dispute resolution meeting, which was held on July 18, 2024. Dkt. 1-2 at 169. Following the dispute resolution meeting, OptumRx upheld its decision to terminate. *Id.*

**D. Springview Files Demand for Arbitration and Brings Suit in Court**

Recognizing that disputes with OptumRx must be arbitrated per its Agreement and the Provider manual, Springview filed a demand for arbitration with the AAA on July 24, 2024. *See* Declaration of Bruce Ewing (hereinafter "Ewing Decl."), Ex. A. That same day, despite knowing and recognizing that there is a binding arbitration clause in the Provider Manual, Springview brought this litigation in New Jersey state court against OptumRx seeking to enjoin OptumRx from terminating Springview from its network on the grounds that OptumRx is contractually prohibited from terminating Springview from its network prior to the conclusion of the arbitration. *See*, Dkt. 1-1 at 2, 11-14 (Compl. ¶¶ 35-60). Springview did not provide OptumRx with notice of the filing until the following

day, July 25, 2024. *See* Ewing Decl., Ex. B. Late on July 25, 2024, the New Jersey state court entered a temporary restraining order prohibiting OptumRx from terminating Springview, although the order was not available on the docket until July 26, 2024. *See* Dkt. 5 at 1, 3. Also on July 25, 2024, OptumRx removed the case to the District of New Jersey on diversity grounds. *See* Dkt. 1.

## III. ARGUMENT

Springview's Motion fails on two separate grounds. First, the binding arbitration clause (upon which Springview also relies) requires that the AAA, not the Court, decide whether to issue a preliminary injunction. Second, Springview's Motion fails because it relies on a faulty contractual interpretation that does not withstand the slightest scrutiny. Because Springview cannot win on the merits, its Motion should be denied.

### A. The AAA Should Decide the Preliminary Injunction

The AAA, not this Court, should decide Springview's Motion because (1) the arbitration clause delegates the question of arbitrability to the AAA; (2) the Motion is within the scope of the arbitration clause; and (3) there are no exigencies to support this Court retaining jurisdiction.

#### 1. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") applies to any contract involving interstate commerce that contains an arbitration clause. 9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 273 (1995). "[Q]uestions of

arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "Section 2 of the FAA provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract.'" *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996) (quoting 9 U.S.C. § 2) (emphasis by Supreme Court). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985) (quoting *Moses*, 460 U.S. at 24–25).

To determine if a dispute is arbitrable under the FAA "a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009). "However, when an arbitration provision, by 'clear and unmistakable evidence,' contains a valid delegation clause, the court's inquiry is limited to the first step: determining whether a valid agreement to arbitrate exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019)). Therefore, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court

may not decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 530.

When a valid arbitration clause exists, the FAA permits parties to compel arbitration and seek a stay of the litigation. *See* 9 U.S.C. § 3. Here, Springview has already commenced an arbitration and does not contest that the arbitration clause is valid and binding.

### 2. The Arbitration Clause Delegates Questions Regarding Scope and Jurisdiction to the Arbitrator

The Provider Manual arbitration clause delegates questions of jurisdiction and scope of a dispute to the AAA. First, the Provider Manual incorporates the AAA Commercial Arbitration Rules. *See* Mlodzik Decl., Ex. 2 at 127. Specifically, the Provider Manual states:

> Any such arbitration shall be administered exclusively by the American Arbitration Association in accordance with its Commercial Arbitration Rules and Mediation Procedures, as they may be amended from time-to-time.

*Id.*; *see also Indocarb Corp. v. Madhavan*, No. 19-889, 2020 U.S. Dist. LEXIS 15805, at *18 (W.D. Pa. Jan. 29, 2020) ("The Parties' incorporation of the AAA Rules renders them binding on the Parties, as if the rules are part of the contract."). Rule 7(a) of the Commercial Arbitration Rules states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters

first to a court."[3] Rule 39 "Emergency Measures of Protection," provides procedures for seeking emergency relief and "the provisions of this rule shall apply to arbitrations conducted under arbitration clauses or agreements entered on or after October 1, 2013" "[u]nless the parties agree otherwise." *See* Rule 39.

Second, the Provider Manual not only incorporates the AAA Commercial Arbitration Rules, but also indisputably delegates the issue of arbitrability to the arbitrator:

> For avoidance of doubt, the arbitrator(s) shall decide any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate.

Mlodzik Decl., Ex. 2 at 127. This is a clear delegation of all arbitrability disputes to the AAA arbitrator. Thus, this Court lacks jurisdiction to decide the arbitrability of the claims in Springview's Complaint. *See Vertiv Corp. v. SVO Bldg. One, LLC*, Civil Action No. 1:18-cv-01776-RGA, 2019 U.S. Dist. LEXIS 56096, at *5 (D. Del. Apr. 2, 2019); *Indocarb Corp. v. Madhavan*, No. 19-889, 2020 U.S. Dist. LEXIS 15805, at *18 (W.D. Penn. Jan. 29, 2020).

### 3. Plaintiff's Injunction Claims Are Within the Scope of the Arbitration Clause

Even assuming this Court had jurisdiction to determine the scope of the arbitration clause, Springview's injunction claims fall within the scope of the

---

[3] The full text of the AAA Commercial Rules is available here: https://www.adr.org/sites/default/files/CommercialRules_Web_1.pdf.

arbitration provision because they turn on whether OptumRx breached the terms of the Provider Manual.

The Provider Manual arbitration clause encompasses "all Disputes." Mlodzik Decl., Ex. 2 at 127. The term Disputes is defined to include "all disputes relating in any way to the parties' relationship, the terms of the Provider Network Agreement ("Agreement") and/or this PM, and the Pharmacy Provider's status in the Administrator's network." *Id.* at 126. Springview's claim is predicated on the allegation that OptumRx will breach the Provider Manual if it is permitted to terminate it prior to holding an arbitration. *See* Dkt. 1-1 at 11-14 (Compl. at ¶¶ 35-60. This is a dispute regarding the Provider Agreement and Provider Manual and is therefore encompassed under the arbitration clause. Springview's injunction claims must be arbitrated in the AAA.

**4. There is No Reason for the Court to Retain Jurisdiction to Decide the Preliminary Injunction Motion**

This Court should exercise restraint and decline to retain jurisdiction of this case because there are no equitable concerns or exigent circumstances to support jurisdiction. The Third Circuit has "consistently admonished courts 'to exercise the *utmost* restraint and to treat gingerly before intruding upon the arbitral process.'" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136-37 (3d Cir. 1998) (emphasis added). And while Courts in this circuit have retained jurisdiction for purposes of determining a preliminary injunction to protect the effectiveness of the

arbitration proceeding, *Ortho Pharmaceutical Corp. v. Amgen, Inc.,* 882 F.2d 806, 812 (3d Cir. 1989), there is no reason for the Court to do so in this case.

Here, the New Jersey State Court already instituted temporary restraints on OptumRx, and the AAA has procedures for hearing and determining a preliminary injunction. *See* Dkt. 5 at 3-7 (entering temporary restraints); *see* AAA Rule 39. As Springview argues, "New Jersey's strong public policy favors settlement of disputes through arbitration." *See* Dkt. 1-2 at 212 (internal citations omitted). There is no reason for this Court to decide Springview's Motion. *See* Ewing Decl., Ex. C at 10 (*Landmark v. OptumRx*, No. 3:24-cv-00024-MAS-DEA, Dkt. 12, Order on Motion to Dismiss (D. N.J. Feb. 8, 2024)). Arbitration, not litigation, is where Springview's dispute should be heard and decided.

The authority upon which Springview relies does not suggest otherwise. *California Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Estate Group,* 193 Cap. App. 4th 849 (2011), is inapplicable as it relies on California state court procedural rules not applicable here. The New Jersey statute to which Springview cites contemplates situations in which a party does not have sufficient time to bring an arbitration, a situation that does not apply here. *See* N.J.S.A. 2A:23B-8(a) ("a party to an arbitration proceeding may move the court for a provisional remedy only if the matter is urgent and the arbitrator is not able to act timely or the arbitrator cannot provide an adequate remedy."). Springview had sufficient time to bring a Rule 39 Motion for Emergent Relief under the AAA rules prior to filing in

state court and certainly has sufficient time to bring a Rule 39 Motion before the AAA now that the state court entered a TRO.

The remaining authority to which Springview cites, *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d. 806 (3d Cir. 1989), addressed only whether the Federal Arbitration Act itself stripped a court's jurisdiction to grant a preliminary injunction and did not address whether a court can enter a preliminary injunction where the issue of arbitrability has been delegated to the arbitrator, or where the arbitrator also has the authority to grant motions for preliminary injunctions like the AAA can here.

For these reasons, the Court should stay this litigation and compel Springview to file its Motion before the AAA within one week of this Court's order.

**B. Springview's Motion for Preliminary Injunction Fails on the Merits**

Jurisdictional issues aside, Springview's Motion relies entirely on an objectively incorrect reading of the unambiguous contractual provisions between Springview and OptumRx. As shown below, the unambiguous language of the Provider Manual permits OptumRx to terminate a pharmacy prior to the conclusion of arbitration. Thus, even if this Court retains jurisdiction, Springview's Motion should still be denied because Springview cannot demonstrate the first and most important element for a preliminary injunction: likelihood of success on the merits.

Springview's Motion also fails because it has not demonstrated irreparable

harm, possibility of harm to others, or that the public interest favors a preliminary injunction. For these reasons, Springview's Motion should be denied.

### 1. Preliminary Injunction Legal Standard

"The grant of injunctive relief is an extraordinary remedy which should be granted only in limited circumstances." *Vital State Can., Ltd. v. Dreampak, LLC*, 303 F. Supp. 2d 516, 519 (D.N.J. 2003) (quoting *Instant Air Freight Co. v. C. F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)).[4] "To obtain a preliminary injunction, an extraordinary remedy, the moving party must show (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted. If these two threshold factors are met, a court then considers the remaining two factors— (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest—and determines, on balance, whether to grant the requested preliminary relief." *Reilly v. City of Harrisburg*, 790 F. App'x 468 (3d Cir. 2019) (internal citations and quotations omitted). To obtain a preliminary injunction, the moving party "must demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *In re Arthur Treacher's*

[4] While the Agreement and Provider Manual must be evaluated under California law, the federal standard for preliminary injunctions applies. *Instant Air Freight*, 882 F.2d at 799 ("Although the Court typically applies state law in diversity actions, the Court utilizes a federal standard in examining requests to federal courts for preliminary injunctions.").

*Franchisee Litig.*, 689 F.2d 1137, 1147 (3d Cir. 1982); *Zenith Labs., Inc. v. Abbott Labs.*, Civil Action No. 96-1661, 1997 U.S. Dist. LEXIS 23954, *23 (D.N.J. Oct. 1, 1997) (a plaintiff's failure to meet "its burden of establishing a likelihood of success on the merits of it claims" means "its motion for a preliminary injunction must fail"). If a plaintiff fails to establish either success on the merits or irreparable harm, the court need not consider the remaining factors. *See Zenith*, 1997 U.S. Dist. LEXIS 23954 at *23 ("Under Third Circuit law, the Court need not go further in its analysis of the factors to consider on a motion for a preliminary injunction, because Zenith's failure to establish a likelihood of success on the merits and irreparable harm is fatal to its motion.").

None of the four factors support granting a preliminary injunction, and Springview's Motion should be denied.

### 2. OptumRx Can Terminate Springview Before the Conclusion of the Merits of an Arbitration

Contrary to Springview's arguments, there is no contractual requirement in the Provider Manual to arbitrate *prior* to termination. Springview's inability to demonstrate success on the merits is dispositive, and the Court's analysis can end here. *See In re Arthur Treacher's Franchisee Litig.*, 689 F.2d at 1147 (holding moving party must show at least some likelihood of success); *see also Lopez v. Credit Union of N.J.*, 2024 U.S. Dist. LEXIS 79026, at *5-*11 (D.N.J. Apr. 30, 2024) (granting motion to dismiss where plain language of contract failed to

support plaintiff's claim); *Perry v. Lee*, 2020 U.S. Dist. LEXIS 107631, at *9-*15 (D.N.J. June 19, 2020) (granting motion to dismiss where contract did not support breach of contract claim).

Section K of the Provider Manual governs terminations. *See* Mlodzik Decl., Ex. 2 at 125-26. Pursuant to Section K, OptumRx may terminate Plaintiff *for cause* immediately or with prior notice. *Id.* Nowhere in Section K is OptumRx required to arbitrate prior to terminating Springview for cause. Pharmacies may request an "informal Appeal Hearing." *Id.* (emphasis added).

Section L governs the dispute resolution and arbitration process and does not state otherwise. Section L differentiates between types of disputes. The Provider Manual defines "Disputes" as "any and all issues, disputes, and/or controversies between the parties, including, but not limited to all disputes relating in any way to the parties' relationship, the terms of the Provider Network Agreement ("Agreement") and/or or this PM, and the Pharmacy Provider's status in the Administrator's network." Mlodzik Decl. Ex. 2 at 126. The Provider Manual excludes specific types of disputes, including disputes over immediate termination, from this definition. *Id.* at 126-27. Section L then provides that if there is a Dispute, then (1) a party must provide written notice; (2) a meeting or telephone conference may be requested at which the parties' representatives may attend; and (3) if the dispute is unresolved, a party may demand arbitration. *See id.* at 127 ("In the event a Dispute arises—other than with respect to issues giving rise to

immediate termination or nonrenewal of the Agreement and actual or threatened disclosure of Administrator's Proprietary Information or Client's Proprietary Information—the party asserting the Dispute shall provide written notice to the other party describing in detail the nature and scope of the Dispute."). Disputes regarding immediate terminations are not required to engage in this dispute resolution process but are still subject to arbitration. *See id.* at 126-27 ("For further avoidance of doubt, all Disputes—including Disputes regarding termination hereof or nonrenewal hereof and actual or threatened disclosure of Administrator's Proprietary Information or Client's Proprietary Information—are subject to the arbitration process described herein.").

Springview's interpretation of Section L also does not make sense because it is in direct conflict with the termination provisions in Section K. Under Springview's interpretation, no immediate termination would be possible because "all Disputes—including Disputes regarding termination hereof or nonrenewal Information or Client's Proprietary Information—are subject to the arbitration process described herein." *Compare id.* at Section L *with id.* at Section K. Such an interpretation violates the principle of contract interpretation that specific provisions prevail over inconsistent general provisions. *See SCA Pacific Holdings Inc. v. Sutter Health*, 2022 Cal. Super. LEXIS 72237, *11 (Nov. 9, 2022) ("This would be a violation of one of the canons of contract interpretation which states that specific provisions govern over the general."); *Jackson v. Donovan*, 215 Cal.

App. 2d 685, 691 (1963) ("the specific provisions in an agreement prevail over those that are general, if inconsistent with the general provisions"). That is not a permissible reading of the Provider Manual.

The logical and permissible reading of the Provider Manual's unambiguous language is that any type of dispute must be heard by the AAA, not a court, but certain types of disputes, including disputes regarding immediate termination of a pharmacy, are not required to exhaust the dispute resolution process prior to filing an arbitration. *See* Mlodzik Decl., Ex. 2 at 126 (excluding "immediate terminations" from the definition of "Dispute"); *id.* at 127 (describing the dispute resolution process prior to imitating arbitration). The sentence that all disputes are subject to arbitration provides clarity that all disputes must be arbitrated even if they are not subject to the dispute resolution process. *See e.g.*, *Medcam, Inc. v. MCNC*, 414 F.3d 972, 974-75 (8th Cir. 2005) (holding language "all disputes regarding" the agreement meant termination decision must be arbitrated). Springview has not identified any legal authority that has held that language that a dispute must be arbitrated means a party is forbidden from acting until the conclusion of the arbitration.

Moreover, under Springview's interpretation of the dispute resolution clause, OptumRx would violate the Provider Manual any time it took any action permitted by the Provider Manual prior to arbitration so long as the other party initiated the dispute resolution process. Section L would hamstring OptumRx—as

well as pharmacies—from executing any of its rights under the Provider Manual so long as there was a dispute. For example, OptumRx would also be prohibited from recouping any overpayment amounts if the pharmacy disputed the recoupment in any way. Notably, while Springview spends the majority of its Complaint disparaging OptumRx's very existence and disputing OptumRx's conduct and conclusions in the audit, it does not make any allegations that OptumRx breached the Provider Manual by recouping payments prior to the close of the arbitration. *See* Dkt. 1-1 at 4-17. Springview's different treatment of different types of disputes confirms that its reading of the Provider Manual is illogical and incorrect.

Additionally, the fact that a party has one year from the date of initiating the dispute resolution process to file the arbitration cuts against Springview's interpretation. *See* Mlodzik Decl. Ex. 2 at 127 ("Unless otherwise agreed to in writing by the parties, the party wishing to pursue the Dispute must initiate the arbitration within one (1) year after the date on which written notice of the Dispute was given"). Under Springview's reading, OptumRx (or a pharmacy) would have to refrain from taking any disputed action until that one-year limitations period expired. That is nonsensical.

Springview's failure to demonstrate likelihood of success on the merits is dispositive, and the request for injunctive relief should be denied. *See In re Arthur Treacher's Franchisee Litig.*, 689 F.2d at 1147.

### 3. Springview Will Not Suffer Irreparable Harm

Springview's alleged damages are monetary, not irreparable. A preliminary injunction is only appropriate where there is no adequate remedy at law—*i.e.*, monetary damages. *Sandoz, Inc. v. United Therapeutics, Corp.,* 2020 U.S. Dist. LEXIS 27606, *15-16 (denying motion for preliminary injunction when movant failed to establish irreparable harm when the only damages were monetary). "The availability of adequate monetary damages belies a claim of irreparable injury." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). Indeed, "a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement." *Id.* "[A] failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *Morton v. Beyer*, 822 F.2d 364, 371 (3d Cir. 1987) (internal quotation omitted).

Springview's claimed harm is in fact a claim for lost profits. Springview contends that it will lose 68% of its business, but this is fundamentally a claim for money damages and is the kind of harm that has an adequate remedy at law. *Frank's*, 847 F.2d at 102 (finding loss of customers from lack of GMC parts and warranty support economic injury); *see also Trilogy Health Care, LLC v. Medco Health Sols., Inc.*, Civil Action No. 13-550 (SRC), 2013 U.S. Dist. LEXIS 129385, at *8-13 (D.N.J. Sep. 10, 2013) (denying preliminary injunction for lack of irreparable harm to pharmacy); *Thayer Plymouth Ctr., Inc. v. Chrysler Motors Corp.*, 63 Cal. Rptr. 148, 152-53 (Cal. Ct. App. 1967) (denying preliminary

injunction where plaintiff alleged it would go out of business because the value of the business could be determined through expert and fact testimony); *Sorkin's Rx Ltd. v. Express Scripts Inc.*, Case No. 4-15-CV-114-JAR, 2015 U.S. Dist. LEXIS 6002, at *13 (E.D. Mo. Jan. 20, 2015) (finding no irreparable harm based on assertion that pharmacy business would be destroyed and stating "claims of potential lost customers and revenue are really 'claims of lost profits, which can be calculated and fully compensated by an award of money damages'") (quoting *Alternative Med. & Pharmacy, Inc. v. Express Scripts, Inc.*, Case No. 4:14 CV-1469-CDP, 2014 WL 4988199, 2014 U.S. Dist. LEXIS 142424, at *23 (E.D. Mo. Oct. 7, 2014)); *Med-Care Diabetic & Med. Supplies, Inc. v. Strategic Health Alliance II*, *Inc.*, Case No. 2:14-082, 2014 WL 325663, 2014 U.S. Dist. LEXIS 10881, at *14-16 (S.D. Ohio Jan. 29, 2014) ("any alleged harm [from termination by PSAO] is purely economic and therefore not irreparable").

Springview's reliance on the state court's order from the plaintiff's *ex-parte* motion for temporary restraining order in *Landmark Drug Corp. d/b/a Landmark Pharmacy v. Optum Rx* Dkt. No. SOM-C-12071-23 (N.J. Ch. Div. Somerset Cnty), to show that harm is irreparable is misplaced. That order was made after receiving only the plaintiff's submission. And in that same case, this Court raised serious concerns regarding the merits of the plaintiff's motion, noting that "there appear to be substantial hurdles as to Plaintiff's requests for relief insofar that the losses presented are largely monetary." Ewing Decl., Ex. C at 10 (*Landmark*, 3:24-cv-

00024-MAS-DEA, Dkt. 12, Memorandum Order (D. N.J. Feb. 8, 2024) (citing OptumRx's opposition brief)).

The remaining case law upon which Springview relies is inapplicable and distinguishable. All but one of the cases it relies on involves trade secrets, patient privacy interests, and/or covenants not to compete. *See* Dkt. 1-2 at 7-8.[5] None of these concerns is applicable here.

The one published case Springview cites involving a pharmacy termination, *Park Irmat Drug Corp. v. OptumRx, Inc.*, 152 F. Supp. 3d 127 (S.D.N.Y 2016), supports OptumRx's position here, as the court denied the request for injunctive relief because the pharmacy was unlikely to prevail on the merits. Moreover, as demonstrated by the number of cases OptumRx cites above, the weight of authority finds that pharmacy termination is not irreparable harm and can be adequately compensated with damages. *Compare Park Irmat*, 152 F. Supp. 3d at 132 (finding irreparable harm) *with Frank's*, 847 F.2d at 102 (finding loss of customers economic injury); *Trilogy Health Care*, 2013 U.S. Dist. LEXIS 129385, at *8-13

[5] The plaintiff in *Community Hospital Group, Inc. v. Blue Goldfaden*, 384 N.J. Super. 251, 255 (App. Div. 2006) sought to enjoin defendant's use or disclosure of confidential health information. Similarly, the plaintiffs in *U.S. Foodservice, Inc. v. Raad*, 2006 WL 1029653 (N.J. Ch. Div. Apr. 12, 2006), *National Risk Services, Inc. v. RK Risk Management, LLC*, 2005 WL 3058162 (N.J. Ch. Div. Nov. 10, 2005), *J.I. Kislak, Inc. v. Artof*, 13 N.J. Misc. 129 (N.J. Ch. Ct. 1934), and *Community Hospital Group Inc. v. More*, 365 N.J. Super. 84 (App. Div. 2003) all sought to enjoin the defendants from using its protected trade secrets. None of Springview's allegations are like any of these cases.

(denying preliminary injunction for lack of irreparable harm to pharmacy); *Thayer Plymouth,* 63 Cal. Rptr. at 152-53 (Cal. Ct. App. 1967) (denying preliminary injunction because the value of the business could be determined through expert and fact testimony); *Sorkin's Rx*, 2015 U.S. Dist. LEXIS 6002, at *13 (no irreparable harm based on assertion that pharmacy business will be destroyed) (quoting *Alternative Med.*, 2014 U.S. Dist. LEXIS 142424, at *23); *Med-Care Diabetic*, 2014 U.S. Dist. LEXIS 10881, at *14-16 ("any alleged harm [from termination by PSAO] is purely economic and therefore not irreparable").

Finally, Springview's claim that its reputation has been damaged because of OptumRx's audit is harm caused by its own public filing. OptumRx does not make its fraud, waste, and abuse findings public. That information would not be available had Springview filed its injunction in arbitration as required by the Provider Manual

Because Springview cannot demonstrate irreparable harm, it is not entitled to a preliminary injunction.

**4. The Harm to Other Interested Parties and Public Policy Weigh Against Granting an Injunction**

Springview asserts that OptumRx will suffer no discernible harm if an injunction is granted. This is false. If OptumRx is prohibited from exercising its contractual right to terminate a pharmacy that has willfully violated the express prohibition of billing for a different medication than what was prescribed and

dispensed, OptumRx will lose altogether its ability to require pharmacies in its network to abide by their contracts and meet the highest standards for safety and quality when serving OptumRx's members.

OptumRx's interests in (i) enforcing its contracts, (ii) ensuring its members appropriately receive the drugs they are prescribed, and (iii) preventing its health plan customers from paying for fraudulent or misrepresented claims outweigh Landmark's alleged financial losses attributable to its own actions. Springview's Motion should also be denied for this reason.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for Preliminary Injunction. Plaintiff's claims should be heard by the AAA, not by a court, and because Plaintiff cannot meet the requirements for a preliminary injunction, including demonstrating a likelihood of success on the merits or irreparable harm. If this the Court defers Plaintiff's Motion to the AAA, the Court should order Springview to file its Motion before the AAA within one week of this Court's order.

Respectfully submitted,

/s/ Bruce R. Ewing

Bruce R. Ewing
DORSEY & WHITNEY LLP
51 W 52nd St,
New York, NY 10019
(212) 415-9200