UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Health First Pharmaceutical Inc. t/a Springview Pharmacy,

Plaintiff,

v.

Optum RX,

Defendant.

Civil Action No. 2:24-cv-08041-SDW-JBC

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 2

A. The Pharmacy Provider Manual ........................................ 2

1. Termination Under the Provider Manual ........................................ 3

2. Pre-Arbitration Dispute Resolution Provisions ........................................ 4

3. Arbitration Provisions ........................................ 5

B. OptumRx Audits Springview ........................................ 6

C. OptumRx Terminates Springview for Cause ........................................ 7

D. Springview Files Demand for Arbitration and Brings Suit in Court ........................................ 8

E. Arbitration Status ........................................ 10

F. The Arbitrator Issues an Interim Order that OptumRx May Terminate Before Conclusion of Arbitration ........................................ 10

III. ARGUMENT ........................................ 12

A. The AAA Should Decide any Motion for Preliminary Injunction ........................................ 12

B. Springview's Motion for Preliminary Injunction Fails on the Merits ........................................ 17

1. Preliminary Injunction Legal Standard ........................................ 17

2. OptumRx Can Terminate Springview Before the Conclusion of the Merits of an Arbitration ........................................ 19

3. Springview Will Not Suffer Irreparable Harm ........................................ 20

4. The Harm to Other Interested Parties and Public Policy Weigh Against Granting an Injunction ........................................ 24

IV. CONCLUSION ........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Arthur Treacher's Franchisee Litig.*,
689 F.2d 1137 (3d Cir. 1982) ....................18, 19

*Campbell Soup Co. v. ConAgra, Inc.*,
977 F.2d 86 (3d Cir. 1992) ....................22

*Cent. Laborers' Pension Fund v. McAfee, Inc.*,
17 Cal. App. 5th 292 (Cal. Ct. App. 2017)....................16

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*,
847 F.2d 100 (3d Cir. 1988) ....................20

*Gasperini v. Ctr. for Humanities, Inc.*,
518 U.S. 415 (1996)....................16

*Harbortouch Payments, LLC v. Denali State Bank*,
2015 U.S. Dist. LEXIS 64991 (D.N.J. May 19, 2015)....................22

*Instant Air Freight Co. v. C. F. Air Freight, Inc.*,
882 F.2d 797 (3d Cir. 1989) ....................17, 21

*John Hancock Mut. Life Ins. Co. v. Olick*,
151 F.3d 132 (3d Cir. 1998) ....................14

*Landmark Drug Corp. v. OptumRx*,
2024 U.S. Dist. LEXIS 22677 (D.N.J. Feb. 8, 2024)....................13

*Mabe v. OptumRx*,
2024 U.S. Dist. LEXIS 128349 (M.D. Pa. July 22, 2024) ....................15

*Med-Care Diabetic & Med. Supplies, Inc. v. Strategic Health All. II, Inc.*,
No. 2:14-082, 2014 U.S. Dist. LEXIS 10881 (S.D. Ohio Jan. 29, 2014) ....................23

*Morton v. Beyer*,
822 F.2d 364 (3d Cir. 1987) ....................21

*N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*,
730 A.2d 843 (N.J. 1999) ....................16

*Nichino Am., Inc. v. Valent U.S.A. LLC*,
44 F.4th 180 (3d Cir. 2022) ....................20

*Ortho Pharm. Corp. v. Amgen, Inc.*,
882 F.2d 806 (3d Cir. 1989) ....................14

*Platt v. OptumRx*,
2023 Cal. App. Unpub. LEXIS 1505 (Cal. Ct. App. Mar. 15, 2023)....................15

*Reilly v. City of Harrisburg*,
790 F. App'x 468 (3d Cir. 2019) ....................18

*Sandoz, Inc. v. United Therapeutics, Corp.*,
2020 U.S. Dist. LEXIS 27606 ....................20

*Sorkin's Rx Ltd. v. Express Scripts Inc.*,
No. 4:15-CV-114-JAR, 2015 U.S. Dist. LEXIS 6002 (E.D. Mo. Jan. 20, 2015)....................23

*Thayer Plymouth Ctr., Inc. v. Chrysler Motors Corp.*,
255 Cal. App. 2d 300 (1967) ....................23

*Thompson v. Neinabar*,
239 F. Supp. 2d 478 (D.N.J. 2002)....................14

*Trilogy Health Care, LLC v. Medco Health Sols., Inc.*,
No. 13-550, 2013 U.S. Dist. LEXIS 129385 (D.N.J. Sep. 10, 2013)....................23

*Vital State Can., Ltd. v. Dreampak, LLC*,
303 F. Supp. 2d 516 (D.N.J. 2003)....................17

*Zenith Labs., Inc. v. Abbott Labs.*,
Civil Action No. 96-1661, 1997 U.S. Dist. LEXIS 23954 (D.N.J. Oct. 1, 1997) ....................18

**Statutes**

Cal. Code Civ. Proc. § 1281.8(b)....................16

Federal Arbitration Act ....................6, 14

N.J. Stat. § 2A:23B-8 ....................16

**Other Authorities**

Federal Rule of Civil Procedure 65(b)(2) ....................................................................9

American Arbiration Assocaition Commercial Arbitration Rule 39 .......................14

## I. INTRODUCTION

Without a showing of any of the factors required for an injunction under federal rules, Plaintiff Health First Pharmaceutical Inc. t/a Springview Pharmacy ("Springview") got a more than a six-month stay of its termination from OptumRx, Inc.'s network while the arbitrator decided the issue of whether, under the parties' agreement, "termination can or cannot precede arbitration." The arbitrator held that the "answer to the question to be ruled on as directed" by this Court is "that TERMINATION CAN PRECEDE ARBITRATION." Dkt. 35 at 6 (emphasis in original).

Having lost the basis for its request for injunctive relief, Springview now seeks a second bite at the apple and again asks this court to enjoin OptumRx from validly terminating Springview from its network pending the conclusion of the arbitration. Springview's motion should be denied. First, any motion for injunctive relief should have been brought before the arbitrator, not this Court. Second, jurisdictional issues aside, Springview has not met its burden of demonstrating any of the factors necessary for injunctive relief.

Specifically, Springview cannot demonstrate likelihood of success on the merits. In neither its Complaint nor its motion does Springview challenge OptumRx's audit findings or determination. Rather, Springview bases its Complaint and request for injunctive relief solely on its argument that the parties' agreement prevents OptumRx from terminating a pharmacy prior to conclusion of

an arbitration. Springview already lost that argument before the Arbitrator. This factor is dispositive of Springview's motion, full stop.

Nor has Springview demonstrated irreparable harm. Springview's primary alleged harm is monetary damages, which are calculable and therefore not irreparable. Vague assertions about Springview's "business losses" are speculative, unsupported, and conclusory. In short, Springview has presented no admissible evidence, financial or otherwise, to demonstrate that termination from OptumRx's network would cause it irreparable harm.

The final two factors for injunctive relief—the possibility of harm to other interested persons from the grant or denial of the injunction, and the public interest—also weigh in OptumRx's favor.

Ultimately, it is Springview's burden to demonstrate that preliminary injunctive relief is appropriate. Springview has failed in that endeavor. OptumRx will succeed on the merits because it is entitled to terminate Springview prior to arbitration. The Court should deny Springview's motion.

## II. BACKGROUND

### A. The Pharmacy Provider Manual

Plaintiff Springview was a pharmacy in-network with OptumRx. Complaint ("Compl."), Dkt. 1-1 at 5, ¶ 6.[1] Springview participated in OptumRx's network

[1] A full copy of the Complaint can be found at Dkt. 1-1 at 4-17.

through a Pharmacy Service Administrative Organization ("PSAO") called Elevate, which contracted directly with OptumRx (the "Agreement"). *Id.* Pharmacies in OptumRx's pharmacy network must abide by the Pharmacy Provider Manual (the "Provider Manual"). *Id.* at ¶ 8. The Provider Manual sets forth termination and dispute resolution requirements, which are discussed in greater detail below. The Agreement and Provider Manual are governed by California law. *See* Dkt. 7-5 ¶ 5; Dkt. 7-6 at § 11.11 ("This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of California"); Dkt.7-7 at 127 (stating that the arbitrators "shall not vary or ignore the terms of the Agreement . . . and shall be bound by controlling law").

**1. Termination Under the Provider Manual**

Pursuant to the 2024 Provider Manual,[2] OptumRx may "terminate or suspend the Agreement or any applicable Addendum or Amendment (in whole or in part with respect to an applicable Client, network and/or Network Pharmacy Provider location) pursuant to business needs, Client-specific network design, for, in the opinion of Administrator, actions detrimental to the provider network(s) or for cause, regardless of the network in which the Network Pharmacy Provider

[2] The current Provider Manual is available at https://professionals.optumrx.com/content/dam/o4-dam/resources/pdfs/guides/OptumRxPharmacyProviderManual2024-Version%203.2.pdf.

participates for reasons including, but not limited to:" (1) OptumRx "reasonably believes that Network Pharmacy Provider or Pharmacist is or has been engaged in fraudulent activity of federal/state law"; (2) OptumRx "determines in its sole and absolute discretion that Network Pharmacy Provider or Pharmacist has violated Administrator's policies and procedures, including without limitation those included in this PM in the provision of Covered Prescription Services"; or (3) Springview "is otherwise non-compliant with the PM." Dkt. 7-7 at 125.

OptumRx may also "terminate or suspend Network Pharmacy Providers in accordance with state law notice requirements where applicable, from the network for reasons, which include, but are not limited to:" (1) "Breach of any of the terms set forth in the Agreement, PM, Addendum and other Administrator documents"; or (2) "Fraudulent Claim submission activity detected." *Id.* at 125–26.

### 2. Pre-Arbitration Dispute Resolution Provisions

The Provider Manual also sets forth dispute resolution procedures and requirements. First, the Provider Manual defines "Dispute" to include "any and all issues, disputes, and/or controversies between the parties, including, but not limited to all disputes relating in any way to the parties' relationship, the terms of the Provider Network Agreement ("Agreement") and/or this PM, and the Pharmacy Provider's status in the Administrator's network." Dkt. 7-7 at 126. The defined term "Dispute" excludes, however, "[a]ll disputes concerning the

immediate termination or non-renewal of the Agreement or the actual or threatened disclosure of Administrator's or Client's Proprietary Information." *Id.*

Except for immediate terminations, which this case is not, controlling agreements require the parties "engage in good faith discussions to try to resolve the Dispute." *Id.* at 127. If the parties are unable to resolve the dispute within 30 days, either party may request a meeting or telephone conference to resolve the dispute. *Id.* If the dispute is unresolved, either party may request arbitration. *Id.*

#### 3. Arbitration Provisions

The Provider Manual contains a broad arbitration clause, which states that the arbitrator(s) appointed by the American Arbitration Association ("AAA"):

> shall decide any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate. For further avoidance of doubt, all Disputes—including Disputes regarding termination hereof or non-renewal hereof and actual or threatened disclosure of Administrator's Proprietary Information or Client's Proprietary Information—are subject to the arbitration process described herein.

Dkt.7-7 at 127. Additionally, the Provider Manual also states that "Notwithstanding judicial proceedings to confirm, vacate, or enforce an award, the parties acknowledge that neither will have the right to litigate a Dispute in court, and that neither will have a right to a trial by a judge or jury, and the right to discovery is limited. **The parties each waive all such rights by agreeing that all disputes must be resolved exclusively in arbitration**." *Id.* at 128 (emphasis in original). The Provider Manual further states that the parties agree the arbitration

provision is subject to the Federal Arbitration Act ("FAA") and that the arbitration "section shall survive any termination of the Agreement and the conclusion of any business dealings between the parties." *Id.* at 128–29.

**B. OptumRx Audits Springview**

OptumRx completed a desktop audit of Springview on October 12, 2023. Dkt. 1-1 at 118. As part of the audit, OptumRx reviewed each prescription for "validity, program parameter adherence, regulatory compliance as well as data entry type errors." *Id.* OptumRx also completed an invoice reconciliation for all purchase records by verifying that the pharmacy had sufficient inventory to cover all the claims Springview submitted to OptumRx. *Id.* OptumRx identified numerous issues in the audit, which it conveyed to Springview by letter dated October 12, 2023. Dkt. 1-1 at 121–39.

Springview appealed the preliminary audit findings. Dkt. 1-1 at 141–47. OptumRx reviewed Springview's appeal submission and revised some, but not all, of the preliminary findings. Dkt. 1-2 at 33–49. After OptumRx issued its final findings, Springview provided additional information. *Id.* at 51–53. OptumRx reviewed the additional information Springview provided, and while OptumRx amended some of its findings, it still found the following violations:

- 1 instance in which Pharmacy submitted claims based on prescription orders that do not contain the frequency of testing as required per CMS MLN Matters Number: SE1008.

- 3 instances of claims determined to be invalid and discrepant claims billed to OptumRx by Pharmacy were identified through direct confirmation with a practitioner who denied prescribing medications submitted by Pharmacy;
- 1 instance of a missing signature log was noted during the audit;
- 42 instances in which Pharmacy submitted claims for products purchased from a non-accredited source;
- 42 instances in which Pharmacy submitted claims for products purchased from an unlicensed wholesaler;
- 1 instance in which Pharmacy did not timely reverse a claim that was not dispensed within 14 days of claim submission;
- 2 instances of incorrect prescriber submitted; and
- 1 instance in which OptumRx received direct confirmation from a member who denied paying the copay or provided indication that the pharmacy waived or otherwise altered the copay amount transmitted by OptumRx.

*Id.* at 71–85.

### C. OptumRx Terminates Springview for Cause

On March 20, 2024, OptumRx notified Springview that it would be terminated for cause effective July 12, 2024, due to the inventory shortages, one

member denial, one prescriber denial, and purchases from a non-NABP accredited distributor identified in the audit. Dkt. 1-2 at 87–88.

Springview appealed the termination decision on March 20, 2024. An appeal hearing was held on May 8, 2024. Dkt. 7-5 ¶ 7. After the hearing, OptumRx upheld its decision to terminate Springview. Springview then requested a dispute resolution hearing, which was held on July 18, 2024. Dkt. 1-2 at 169. Following the meeting, OptumRx determined to uphold its termination decision because Springview did not provide any additional information to resolve the contract violations. *Id*. Following the dispute resolution hearing, OptumRx upheld its decision to terminate. *Id.* OptumRx notified Springview that it would be terminated effective August 2, 2024.

**D. Springview Files Demand for Arbitration and Brings Suit in Court**

Recognizing that disputes with OptumRx must be arbitrated per its Agreement and the Provider manual, Springview filed a demand for arbitration with the AAA on July 24, 2024. *See* Dkt. 7-2. That same day, despite knowing and recognizing that there is a binding arbitration clause in the Provider Manual, Springview also brought litigation in New Jersey state court against OptumRx seeking to enjoin OptumRx from terminating Springview from its network on the ground that OptumRx is allegedly contractually prohibited from terminating Springview from its network prior to the conclusion of the arbitration. *See*, Dkt. 1-1 at 2, 11–14 (Compl. ¶¶ 35–60). Springview did not provide OptumRx with notice

of the filing until the following day, July 25, 2024. *See* Dkt. 7-3. Late on July 25, 2024, the New Jersey state court entered an *ex parte* temporary restraining order prohibiting OptumRx from terminating Springview, although the order was not available on the docket until July 26, 2024. *See* Dkt. 5 at 1, 3. The New Jersey state court signed Springview's proposed order to show cause with no substantive changes and made no findings in support of the order. Dkt. 5.

On July 25, 2024, OptumRx removed the case to the District of New Jersey on diversity grounds. *See* Dkt. 1. Following removal, OptumRx filed an opposition to Plaintiff's state court order to show cause. Dkt. 7. OptumRx also filed a motion to dismiss or, alternatively, a motion to stay pending arbitration. Dkt. 8.

On September 24, 2024, the matter was reassigned to this Court. Dkt. 15. Recognizing that the arbitration clause in the parties' agreement requires that "the arbitrator(s) shall decide any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate," the Court found that the arbitrator "should interpret the relevant agreement and determine whether termination can or cannot precede arbitration." Dkt. 19. While the state court's TRO had expired under Federal Rule of Civil Procedure 65(b)(2), in response to this Court's inquiry, OptumRx voluntarily agreed "to suspend any termination of . . . Springview Pharmacy until after Arbitrator James Abelsen . . . rules on the question of 'whether termination can or cannot precede arbitration.'" Dkt. 20.

### E. Arbitration Status

The parties had begun discovery in the merits arbitration, but Springview requested to stay discovery for briefing on the issue of termination before arbitration. OptumRx agreed to the stay in exchange for a faster briefing schedule. The agreed upon briefing schedule was complete on December 23, 2024, but was extended into January because Plaintiff requested leave to reply (without OptumRx's consent) and for a hearing. The arbitration schedule has been stayed since December 10, 2024. No discovery responses have been exchanged as a result of the stay, and Springview has not made any request to amend the schedule now that the arbitrator has ruled on the issue of termination. The arbitration will not conclude on March 31, and OptumRx expects it to last another 4-6 months once the stay is lifted.

### F. The Arbitrator Issues an Interim Order that OptumRx May Terminate Before Conclusion of Arbitration

The parties briefed the question of whether termination can or cannot precede arbitration and held a hearing before the arbitrator. On February 7, 2025, the arbitrator ruled in OptumRx's favor and held that under the contract, termination can precede arbitration. Dkt. 35 at 6.

The Arbitrator disposed of all three of plaintiff's arguments advanced (again) on this motion. First, in interpreting a phrase from the arbitration agreement stating that "all disputes are subject to the arbitration process," the

Arbitrator determined that it was only the "mediation or dispute resolution process, not arbitration, that is the 'condition precedent' to the termination." *Id.* at 4. The Arbitrator likewise rejected plaintiff's second argument, ruling that the phrase "subject to" was not ambiguous, and accordingly could not be construed against OptumRx as the drafter of the agreement. *Id.* at 5. Furthermore, the agreement did not conflict with "Any Willing Provider" laws, as the Arbitrator identified that "[t]erminating Springview's participation for failing to comply with the network terms and conditions is appropriate, legal, and arguably necessary." *Id.* Last, the Arbitrator ruled that the agreement was not unconscionable, instead referring to the agreement as "commonplace and legal," highlighting the necessity of such agreements for large businesses like OptumRx. *Id.* Here, because the agreement was reasonable, based on legitimate business needs, and not misleading, it was enforceable. *Id.*

On February 14, 2025, OptumRx once again provided notice to Springview of its termination from OptumRx's network. That termination was effective as of February 19, 2025. On February 19, 2025, Springview brought the present motion "Order to Show Cause with Temporary Restraints and Preliminary Injunctive

Relief" once again seeking to bar OptumRx from terminating Springview from its pharmacy network until final conclusion of the arbitration. Dkt. 36-1.

## III. ARGUMENT

### A. The AAA Should Decide any Motion for Preliminary Injunction

Springview once again seeks relief in the wrong forum. As set forth in detail in OptumRx's prior opposition to Springview's motion for preliminary injunction, Dkt. 7-0 (which is incorporated fully herein by reference), the parties' agreement contains a broad arbitration clause that "all Disputes" are subject to arbitration. Dkt. 7-7 at 127. The term Disputes is defined to include "all disputes relating in any way to the parties' relationship, the terms of the Provider Network Agreement ("Agreement") and/or this PM, and the Pharmacy Provider's status in the Administrator's network." *Id.* at 126. Springview's claim is predicated on the allegation that OptumRx will breach the Provider Manual if it is permitted to terminate it prior to holding an arbitration. *See* Dkt. 1-1 at 11–14 (Compl. at ¶¶ 35–60). This is a dispute regarding the Provider Agreement and Provider Manual and is therefore encompassed under the arbitration clause. Springview's injunction claims must be arbitrated in the AAA.

The arbitration provisions leave no doubt that Springview's motion must be resolved through arbitration. *See* Dkt. 7-7 at 3 ("THIS PM (INCLUDING THE AGREEMENT) CONTAINS PROVISIONS GOVERNING THE RESOLUTION OF DISPUTES RELATING IN ANY WAY TO THE PARTIES'

RELATIONSHIP, INCLUDING THAT ALL SUCH DISPUTES BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION."); *id.* at 128–29 ("Notwithstanding judicial proceedings to confirm, vacate, or enforce an award, the parties acknowledge that neither will have the right to litigate a Dispute in court, and that neither will have a right to a trial by a judge or jury and the right to discovery is limited. **The parties each waive all such rights by agreeing that all disputes must be resolved exclusively in arbitration**.") (emphasis in original); *see also id.* at 127 ("For further avoidance of doubt, all Disputes—including Disputes regarding termination hereof or non-renewal hereof and actual or threatened disclosure of Administrator's Proprietary Information or Client's Proprietary Information—are subject to the arbitration process described herein.").

Indeed, the question as to where Springview should bring its preliminary injunction motion has already been decided by a case within the District of New Jersey, and Springview cites precisely that case. *See* Dkt. 36-1 at 13 (citing *Landmark Drug Corp. v. OptumRx*, 2024 U.S. Dist. LEXIS 22677 (D.N.J. Feb. 8, 2024)). In *Landmark Drug*, the court interpreted the same arbitration provision in OptumRx's Provider Manual, ruled that the provision controlled and dictated that a motion for a preliminary injunction should be resolved by the arbitrator. *See Landmark Drug*, 2024 U.S. Dist. LEXIS 22677, at *12 ("In the alternative, OptumRx contends that Plaintiff's motion for a preliminary injunction and temporary restraints would be most effectively resolved through arbitration, in

accordance with the broad provision of the PPM's arbitration and dispute resolution clause. . . . The Court agrees."). Springview's other source of authority reached the same conclusion regarding a similar arbitration provision. *See Thompson v. Neinabar*, 239 F. Supp. 2d 478, 486 (D.N.J. 2002) ("Even if plaintiff is frustrated with the arbitral system . . . this Court does not have jurisdiction to consider his claims for legal or equitable relief outside the arbitral system given the parties' broad-based arbitration agreement.").

The arbitration between the parties has been pending for nearly seven months. At any time, Springview could have brought a motion for emergency relief under Rule 39 of the AAA's rules.[3] Despite acknowledging the broad arbitration clause, it has chosen not to.

The Third Circuit has "consistently admonished courts 'to exercise the *utmost* restraint and to treat gingerly before intruding upon the arbitral process.'" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136–37 (3d Cir. 1998) (quoting *Lewis v. American Fed'n of State, Cnty. & Mun. Emps.*, 407 F.2d 1185, 1191 (3d Cir. 1975)) (emphasis added). Furthermore *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806 (3d Cir. 1989), upon which Springview relies, only addressed whether the Federal Arbitration Act itself stripped a court's jurisdiction

---

[3] Rule 39, "Emergency Measures of Protection," provides procedures for seeking emergency relief in arbitrations before the AAA. *See* https://www.adr.org/sites/default/files/CommercialRules_Web_1.pdf.

to grant a preliminary injunction and not whether a court can enter a preliminary injunction where the issue of arbitrability has been delegated to the arbitrator.

Springview's citation to *Platt v. OptumRx*, 2023 Cal. App. Unpub. LEXIS 1505 (Cal. Ct. App. Mar. 15, 2023), is also inapposite. *See* Dkt. 36-1 at 14. Putting aside that *Platt* is a California state court decision, Springview's reliance on *Platt* demonstrates that it is making precisely the same argument that the Arbitrator rejected related to the purported unconscionability of Springview's agreement with OptumRx. The Arbitrator referred to the agreement as "commonplace and legal" and "necessary" for businesses like OptumRx—in other words, not unconscionable. *See* Dkt. 35 at 5. In case the arbitrator's determination on this question was insufficient, a court within the Third Circuit has grappled with *Platt* directly, finding it inapplicable to cases like this one. *See Mabe v. OptumRx*, 2024 U.S. Dist. LEXIS 128349, at *34 n.9 (M.D. Pa. July 22, 2024). *Mabe* disposed of *Platt* by noting that "[w]hereas the *Platt* court concluded that enforcing the Provider Manual would be unconscionable because there was no negotiation or meaningful choice over the Manual and the pharmacies did not sign any version of the Manual, this Court disagrees with this conclusion." *Id.* (citation and internal quotation omitted). *Mabe* also highlighted four other courts agreeing with its conclusion as to a lack of unconscionability in the agreement. *See id.* (collecting cases).

The procedural statutes from New Jersey and California that Springview cites likewise do not apply. Although California substantive law applies to this dispute, "procedural matters are governed by the law of the forum." *Cent. Laborers' Pension Fund v. McAfee, Inc.*, 17 Cal. App. 5th 292, 346 (Cal. Ct. App. 2017) (internal quotations and citation omitted); *see Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law"); *see also N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 848 (N.J. 1999) ("Another well-established principle of choice of law is controlling, however, namely that the procedural law of the forum state applies even when a different state's substantive law must govern") (citation omitted). Even if these provisions were controlling, they would provide Springview no relief. The New Jersey statute provides that preliminary injunctive relief would be available only "[b]efore an arbitrator is appointed and is authorized and able to act." N.J. Stat. § 2A:23B-8. Likewise, the California statute states that once arbitration is pending, a party to an arbitration agreement may file only in a court of the county in which that proceeding is pending. Cal. Code Civ. Proc. § 1281.8(b). Arbitration has been ongoing for seven months, *see supra* Section II.D, making the New Jersey statute inapplicable, and the arbitration is pending in Minnesota, making the California statute inapplicable.

The Court should deny Springview's motion on these grounds.

**B. Springview's Motion for Preliminary Injunction Fails on the Merits**

Jurisdictional issues aside, Springview's motion relies entirely on the same argument it already lost before the Arbitrator. The language of the Provider Manual permits OptumRx to terminate a pharmacy prior to the conclusion of arbitration. Thus, even if the Court had jurisdiction to decide the request for injunctive relief (it doesn't), Springview is not likely to succeed on the merits. Further, Springview has not demonstrated irreparable harm, the possibility of harm to others, or that the public interest favors a preliminary injunction. For these reasons, Springview's motion should be denied.

**1. Preliminary Injunction Legal Standard**

"The grant of injunctive relief is an extraordinary remedy which should be granted only in limited circumstances." *Vital State Can., Ltd. v. Dreampak, LLC*, 303 F. Supp. 2d 516, 519 (D.N.J. 2003) (quoting *Instant Air Freight Co. v. C. F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)).[4] "To obtain a preliminary injunction, an extraordinary remedy, the moving party must show (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted. If these two threshold factors are met, a court

[4] While the Agreement and Provider Manual must be evaluated under California law, the federal standard for preliminary injunctions applies. *Instant Air Freight*, 882 F.2d at 799 ("Although the Court typically applies state law in diversity actions, the Court utilizes a federal standard in examining requests to federal courts for preliminary injunctions.").

then considers the remaining two factors— (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest—and determines, on balance, whether to grant the requested preliminary relief." *Reilly v. City of Harrisburg*, 790 F. App'x 468 (3d Cir. 2019) (internal citations and quotations omitted). To obtain a preliminary injunction, the moving party "must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1147 (3d Cir. 1982) (emphasis added); *Zenith Labs., Inc. v. Abbott Labs.*, Civil Action No. 96-1661, 1997 U.S. Dist. LEXIS 23954, *23 (D.N.J. Oct. 1, 1997) (a plaintiff's failure to meet "its burden of establishing a likelihood of success on the merits of it claims" means "its motion for a preliminary injunction must fail"). If a plaintiff fails to establish either success on the merits or irreparable harm, the court need not consider the remaining factors. *See Zenith*, 1997 U.S. Dist. LEXIS 23954, at *23 ("Under Third Circuit law, the Court need not go further in its analysis of the factors to consider

on a motion for a preliminary injunction, because Zenith's failure to establish a likelihood of success on the merits and irreparable harm is fatal to its motion.").

None of the four factors supports granting a preliminary injunction, and Springview's Motion should be denied.

### 2. OptumRx Can Terminate Springview Before the Conclusion of the Merits of an Arbitration

Springview's failure to demonstrate likelihood of success on the merits is dispositive, and the request for preliminary injunctive relief should be denied. *See In re Arthur Treacher's Franchisee Litig.*, 689 F.2d at 1147.[5]

In arguing likelihood of success, Springview misleadingly misstates its Complaint. Springview argues that it seeks an order "compelling [arbitration], continuing and protecting the arbitration process pursuant to the terms of the [Provider Manual]" and "nothing more, nothing less." Dkt. 36-1 at 17 (citing Compl. ¶¶ 53–60). This is false. What Springview fails to state is that its request for injunctive relief in the Complaint is entirely based on its tortured reading of the parties' Agreement that the Arbitrator already determined was wrong. *See* Dkt. 1-1 at 11 (Compl. ¶ 56 (alleging that "the PPM expressly requires an arbitration

[5] Citing a California state court case, Springview contends that a greater showing on either irreparable harm or likelihood of success on the merits decreases the burden of proof as to the other factor. *See* Dkt. 36-1 at 16 (citing *Tulare Lake Canal Co. v. Stratford Pub. Util. Dist.*, 92 Cal. App. 5th 380, 396–97 (Cal. Ct. App. 2023)). As detailed, *supra*, California procedural law is inapplicable to the present dispute. *See supra* Section III.A.4.A.

proceeding before Optum can terminate a pharmacy from its pharmacy network")); *Id.* (Compl. ¶ 58 (alleging that OptumRx breached the Provider Manual by "unilaterally terminating Springview without engaging in the required arbitration proceeding")). The Arbitrator already ruled that the parties' agreement does not require completion of the arbitration proceedings before OptumRx is allowed to terminate Springview. Dkt. 35 at 6. This Court previously determined that that questions regarding interpretation of the agreement are for the arbitration. Springview should not get a second bite at the apple.

Not only is Springview not likely to succeed on the merits, given the way it styled its own Complaint, Springview has actually already lost on the merits of its request for "Permanent Injunctive Relief" in its Complaint in this matter. Springview's motion should be denied on this basis alone. *Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 185 (3d Cir. 2022) ("If a court finds no likelihood of success on the merits, the inquiry ends and the injunction will be denied") (citations omitted).

### 3. Springview Will Not Suffer Irreparable Harm

Springview's alleged damages are monetary, not irreparable. A preliminary injunction is only appropriate where there is no adequate remedy at law—*i.e.*, monetary damages. *Sandoz, Inc. v. United Therapeutics, Corp.,* 2020 U.S. Dist. LEXIS 27606, *15–16 (denying motion for preliminary injunction when movant failed to establish irreparable harm when the only damages were monetary). "The

availability of adequate monetary damages belies a claim of irreparable injury." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). Indeed, "a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement." *Id.* "An inability to precisely measure financial harm does not make that harm irreparable or immeasurable." Acierno v. New Castle Cnty., 40 F.3d 645, 655 (3d Cir. 1994) (reversing district court's order granting preliminary injunction because no showing of irreparable harm). "[A] failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *Morton v. Beyer*, 822 F.2d 364, 371 (3d Cir. 1987) (internal quotation omitted).

Springview has failed to demonstrate that an irreparable injury would stem from termination. Springview has not met its burden of proof to demonstrate that the termination would force it to close. Indeed, Springview's own authority is readily applicable to the present case. In *Atlantic Coast Demolition & Recycling v. Board of Chosen Freeholders of Atlantic County*, though the court acknowledged that a business' closure could constitute irreparable harm, the court determined that the movant had *not* proven that such a result would occur despite the business' showing of monetary loss. 893 F. Supp. 301, 309 (D.N.J. 1995). Similarly, in *Instant Air Freight Company v. C.F. Air Freight*, the Third Circuit overturned a district court's finding of irreparable harm, as the movant's claim that it would be forced to shut down was "not supported by any financial statements or projections

in the record indicating that [the movant] will be forced into bankruptcy." 882 F.2d 797, 802 (3d Cir. 1989). The same is true of Springview here—beyond a singular figure related to the loss of OptumRx reimbursements, Springview has not provided any evidence of its potential loss.

Springview's threadbare argument as to "spill-over effects" likewise fails. Despite lengthy excerpts from *Park Irmat Drug Corporation v. OptumRx*, the case is readily distinguishable as to irreparable harm. In that case, the movant supported its claims of spill-over effects with a detailed affidavit from its chief operating officer describing the practices of local dermatologists and providing referral data to support its claims. 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016).[6] By contrast, the extent of Springview's evidence as to spill-over effects consists of a single, bald assertion from its attorney that determining such a loss would be impossible. *See* Dkt. 36-1 at 19. Without concrete evidence of irreparable harm, the preliminary injunction must be denied. *See, e.g.*, *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992) (reversing district court's grant of preliminary injunction due to failure of evidence demonstrating irreparable harm); *Harbortouch Payments, LLC v. Denali State Bank*, 2015 U.S. Dist. LEXIS 64991, at *15 (D.N.J. May 19, 2015) (denying motion for preliminary injunction because

[6] Despite a finding of irreparable harm, the court ultimately refused to issue a preliminary injunction since the movant had not sufficiently demonstrated likelihood of success on the merits as to the underlying dispute. *Park Irmat*, 152 F. Supp. 3d at 141.

claims of irreparable harm were insufficiently supported). *Apollo Technologies Corporation v. Centrosphere Industrial Corporation*—another case Springview cites—confirms that Springview has not supported its claims of irreparable harm sufficiently. 805 F. Supp. 1157, 1194–95 (D.N.J. 1992). "Where no clear factual record exists apart from the general statements of the plaintiff, a finding of irreparable injury is not warranted." *Id.* at 1211 (citations omitted).

Further, *Park Irmat* is an outlier. Numerous other cases have found no irreparable harm in similar situations involving pharmacy terminations from a network. *See, e.g.*, *Trilogy Health Care, LLC v. Medco Health Sols., Inc.*, No. 13-550, 2013 U.S. Dist. LEXIS 129385, at *8–13 (D.N.J. Sep. 10, 2013) (denying preliminary injunction for lack of irreparable harm to pharmacy); *Thayer Plymouth Ctr., Inc. v. Chrysler Motors Corp.*, 255 Cal. App. 2d 300, 306–07 (1967) (denying preliminary injunction where plaintiff alleged it would go out of business because the value of the business could be determined through expert and fact testimony); *Sorkin's Rx Ltd. v. Express Scripts Inc.*, No. 4:15-CV-114-JAR, 2015 U.S. Dist. LEXIS 6002, at *13 (E.D. Mo. Jan. 20, 2015) (finding no irreparable harm based on assertion that pharmacy business would be destroyed and stating "claims of potential lost customers and revenue are really 'claims of lost profits, which can be calculated and fully compensated by an award of money damages'") (quoting *Alternative Med. & Pharmacy, Inc. v. Express Scripts, Inc.*, No. 4:14 CV-1469-CDP,, 2014 U.S. Dist. LEXIS 142424, at *23 (E.D. Mo. Oct. 7, 2014)); *Med-Care*

*Diabetic & Med. Supplies, Inc. v. Strategic Health All. II, Inc.*, No. 2:14-082, 2014 U.S. Dist. LEXIS 10881, at *14–16 (S.D. Ohio Jan. 29, 2014) ("[A]ny alleged harm [from termination by PSAO] is purely economic and therefore not irreparable[.]").

Springview has not made the requisite showing of irreparable harm and its motion should be denied.

#### 4. The Harm to Other Interested Parties and Public Policy Weigh Against Granting an Injunction

Springview asserts that OptumRx will suffer no discernible harm if an injunction is granted. This is false. If OptumRx is prohibited from exercising its contractual right to terminate a pharmacy that has willfully violated the express prohibition of billing for a different medication than what was prescribed and dispensed, OptumRx will lose altogether its ability to require pharmacies in its network to abide by their contracts and meet the highest standards for safety and quality when serving OptumRx's members.

The regulations cited by Springview (Dkt. 36-1 at 23) are inapplicable. These regulations apply to pharmacy permit holders, not PBMs, like OptumRx. There is nothing in those regulations that require a PBM to keep a pharmacy in its network even in the face of contract violations by that pharmacy. Contrary to Springview's argument, patient choice is not at stake when the pharmacy in

question acts not only in violation of its contractual obligations, but in ways that present significant health and safety risks to patients and members.

OptumRx's interests in (i) enforcing its contracts, (ii) ensuring its members appropriately receive the drugs they are prescribed, and (iii) preventing its health plan customers from paying for fraudulent or misrepresented claims outweigh Springview's alleged financial losses attributable to its own actions. Springview's Motion should also be denied for this reason.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Springview's motion for preliminary injunction.[7]

Respectfully submitted,

*/s/ Bruce R. Ewing*

Bruce R. Ewing
DORSEY & WHITNEY LLP
51 W 52nd St,
New York, NY 10019
(212) 415-9200

[7] Under Rule 65(c), if any in injunctive relief is issued, Springview must be required to provide security. FED. R. CIV. P. 65(C) ("Security. The court may issue a preliminary injunction or a temporary restraining order *only* if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.") (emphasis added); *see also Frank's*, 847 F.2d at 103 ("Rule 65(c) of the Federal Rules of Civil Procedure . . . mandates that a court when issuing an injunction must require the successful applicant to post adequate security.").